**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No: 8:24-cr-303-MSS-AEP**

**ERIC ANDERSON**

---

**ORDER**

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion to Suppress, (Dkt. 51), and the Government's response in opposition. (Dkt. 54) Defendant moves to suppress evidence seized from his home on the date of his arrest. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Defendant's motion.

## I. BACKGROUND

On May 14, 2024, U.S. Customs and Border Protection officers targeted a shipment (Parcel 1) from China, which was found to contain N,N-Dimethylpentylone Hydrochloride, a Schedule I controlled substance. On May 20, 2024, another shipment (Parcel 2) from China was targeted and found to contain the same controlled substance. Both parcels were addressed to "Jason White" at 9313 N. Margaret Ave, Tampa, FL 33612, and were purportedly shipped from a location in Sacramento, CA.

On May 23, 2024, the evidence was transferred to the United States Postal Inspection Service for a controlled delivery. U.S. Postal Inspector Kristi Parkerson then applied for an anticipatory search warrant for 9313 N. Margaret Ave., Tampa, FL 33612. On May 31, 2024, U.S. Magistrate Judge Sean P. Flynn signed a warrant authorizing a search of the person or the residence at 9313 N. Margaret Ave., Tampa, FL 33612 and listing the items that may be searched or seized. (Dkt. 51-1) The warrant permitted a tracking device to be inserted into Parcel 2 to allow GPS tracking and information if opened.

On June 5, 2024, surveillance was deployed at the Margaret Ave. address and Parcel 2 (with its tracking device) was delivered to that address. The tracking device was the size of a key fob and wrapped in a bundle of drugs. The package also contained a hair wire that would alert law enforcement when split, indicating the package was opened. Anderson was later observed picking up Parcel 2 from the Margaret Ave. address and taking it to his residence at 4409 Summer Savory St., Tampa, FL 33619. Surveillance followed Anderson. Agents observed Anderson arrive at the Summer Savory St. address, exit his vehicle, and talk on his cell phone for a few minutes in the driveway. Anderson then went into his home. At no point did Anderson engage in any suspicious behavior indicating counter-surveillance. In the meantime, once law enforcement officials were able to determine that Anderson was traveling toward his residence, Inspector Parkerson began the process of applying for a search warrant for the Summer Savory St. house.

Approximately 15 minutes after Anderson entered his residence, Agents were alerted that Parcel 2 was opened inside the Summer Savory St. address. After Parcel 2 was opened, law enforcement used a battering ram to forcefully enter the residence, removed two occupants, and conducted an "officer safety sweep." During the sweep, the officers observed a money counter and noted the house had a strong smell of marijuana. At the time of entry, law enforcement had neither an arrest warrant for Anderson nor a search warrant for the home.

After law enforcement conducted the safety sweep and removed Anderson from the home, they secured the residence until Inspector Parkerson was able to obtain a search warrant for the Summer Savory St. location. The search warrant affidavit included items observed during the protective sweep, namely, that agents detected a strong odor of marijuana and observed a money counter in plain view. Later that day, U.S. Magistrate Judge Thomas Wilson issued a search warrant for the Summer Savory St. residence. (Dkt. 54-1) Following the issuance of the search warrant, agents collected the following items: Parcel 2 and its contents, U.S. currency, suspected fentanyl pills, methamphetamine, marijuana, four cell phones, a Smith & Wesson firearm, and a firearm magazine with six bullets. (Dkt. 54 at 7)

On June 6, 2024, Defendant was charged by criminal complaint with possession with intent to distribute N,N-Dimethylpentylone Hydrochloride (street name – Ecstasy/Molly) in violation of 21 U.S.C. § 841(a)(1). (Dkt. 1) On July 2, 2024, a federal grand jury returned an Indictment charging Defendant with one count of conspiracy to distribute and possess with intent to distribute controlled substances, one

count of possession with intent to distribute controlled substances, one count of possession of a firearm in furtherance of drug trafficking, and one count of possession of a firearm by a convicted felon. (Dkt. 17)

Defendant then filed this Motion, which seeks to suppress the narcotics and firearm seized from his home. (Dkt. 51) Defendant argues that these items should be suppressed because they were discovered when law enforcement unlawfully entered his home without a search warrant in violation of the Fourth Amendment. Defendant further argues that exigent circumstances did not justify the warrantless intrusion into his home because law enforcement was responsible for creating the exigent circumstances. Finally, Defendant argues that there was no justification for a protective sweep because officers were not lawfully within his home.

The Court held an evidentiary hearing on Defendant's motion to suppress. (Dkt. 71) The Court then permitted the parties to submit supplemental briefing on the issue of whether exigent circumstances existed under these facts. The parties filed this supplemental briefing, (Dkts. 72, 73), and the matter is now ripe for review. For the reasons explained below, the Court **DENIES** the Motion.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980). Thus, a warrantless search of a home is "presumptively unreasonable."

United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991). Evidence seized as a result of an illegal search cannot be used by the government in a later criminal case. Franks v. Delaware, 438 U.S. 154, 171 (1978). The exclusionary rule, as it is known, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Calandra, 414 U.S. 338, 348 (1974). In other words, the rule only apples where it "result[s] in appreciable deterrence" for law enforcement. Herring v. United States, 555 U.S. 135, 141 (citing United States v. Leon, 468 U.S. 897, 909 (1984)). Suppression of evidence is therefore not "an automatic consequence of a Fourth Amendment violation." Id. at 137.

One exception to the exclusionary rule "is made for 'exigent circumstances,' or situations in which 'the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.'" McClish v. Nugent, 483 F.3d 1231, 1240–41 (11th Cir. 2007) (quoting United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983)). Generally, a warrantless entry under this exception requires probable cause and exigent circumstances. Kirk v. Louisiana, 536 U.S. 635, 638 (2002). "The exigent circumstances exception encompasses situations such as hot pursuit of a suspect, risk of removal or destruction of evidence, and danger to the arresting officers or the public." United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986). The Eleventh Circuit has recognized that "the need to invoke the exigent circumstances exception to the warrant requirement is 'particularly compelling in narcotics cases' because narcotics can be so quickly destroyed." Tobin, 923 F.2d at 1510 (quoting United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990)). Exigent circumstances

will not, however, justify a warrantless entry if the exigency was created by those conducting the search. United States v. McGregor, 31 F.3d 1067, 1069 (11th Cir. 1994).

Once entry is lawfully made to one portion of a residence, a brief entry into other rooms is constitutionally permissible under the "protective sweep" doctrine. Officers may undertake a limited protective sweep without probable cause or reasonable suspicion of "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Maryland v. Buie, 494 U.S. 325, 334 (1990). Beyond those spaces, any protective sweep must be based on "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. "A protective sweep may also be undertaken without an arrest warrant, so long as officers are lawfully within the premises due to, for example, exigent circumstances." United States v. Timmann, 741 F.3d 1170, 1181 (11th Cir. 2013) (citations omitted). While conducting a valid protective sweep, any evidence in plain view can be used to support a subsequent search warrant for the residence. United States v. Magluta, 44 F.3d 1530, 1538 (11th Cir. 1995).

## III. DISCUSSION

Defendant argues that the evidence seized from his home should be suppressed because law enforcement entered his home without a warrant in violation of the Fourth Amendment. Specifically, Defendant argues that, to the extent the officers

relied on exigent circumstances to enter his home, the entry was improper because law enforcement was responsible for creating the exigency. And because the entry was unlawful, Defendant argues that any protective sweep was also unlawful. The Government responds that the entry was permissible due to exigent circumstances.

**a. Exigent Circumstances**

The Government argues that exigent circumstances were present once Defendant opened Parcel 2 because he could have discovered the tracking device and destroyed the narcotics. Again, Defendant responds that the exigent circumstances exception is inapplicable because the Government created the exigency by failing to arrest Defendant outside his home—when there was probable cause to do so—and waiting, instead, until he entered his home and the device was triggered to claim exigent circumstances.

As set forth above, the exigent circumstances exception encompasses the risk of removal or destruction of evidence. Edmondson, 791 F.2d at 1515. The risk of destruction of evidence is particularly prevalent in narcotics cases because narcotics can be quickly destroyed. Tobin, 923 F.2d at 1510. The exception is not available where those conducting the search are responsible for creating the exigency. McGregor, 31 F.3d at 1069.

To determine whether exigent circumstances justified the warrantless entry into the Summer Savory St. residence, two cases from the Eleventh Circuit merit further discussion. In United States v. McGregor, law enforcement placed a beeper inside a package containing cocaine before completing a controlled delivery. 31 F.3d at 1069.

When the beeper sounded, indicating the box had been opened, the monitoring officers reasonably believed the defendant would discover the beeper, realize he was being watched, and attempt to destroy the evidence.[1] The Court found this chain of events to qualify as exigent circumstances. Id. McGregor argued, however, that officers created the exigency by placing the beeper in the package and executing the controlled delivery without first securing a search warrant. The Court disagreed, finding that the placement of the beeper did not create the exigency, but the exigency resulted from the parcel being opened and the device being potentially discovered. The Court reasoned that a beeper was used because both the identity of the ultimate holders of the cocaine and the place where the box would be opened were unknown to investigators (although the defendant was suspected). Because "[t]his place was unknown and unknowable until the box was opened," the Court could not say that officers acted unreasonably in concluding that obtaining a warrant would be impractical. Id.

In United States v. Santa, the DEA had planned—with the assistance of a confidential informant ("CI")—a drug transaction that would take place inside the defendant's apartment. 236 F.3d 662, 665 (11th Cir. 2000). The plan was for an undercover agent posing as the "money man" to guard the money outside the apartment while the CI went inside to inspect the drugs. If the drugs looked good, the CI would leave the apartment, retrieve the money from the undercover agent, and

---

[1] It is unclear why the Eleventh Circuit determined that officers "reasonably believed" the device would be discovered. For example, it is unclear if the beeper would emit a sound that would alert the individual or if the beeper was placed in the package in such a way that whoever opened the package would see the beeper.

return to the apartment to complete the exchange. The CI was also directed to give a prearranged visual signal confirming he saw the narcotics in the apartment. Agents conducting the surveillance later witnessed a suspected co-conspirator bring a plastic bag into the apartment. The CI then exited the apartment, gave the signal, and agents entered the apartment without a search warrant. Id. at 665–66.

The Government argued that the entry was lawful because exigent circumstances were present when police received the signal from the CI that drugs were in the apartment. The Government asserted that once the agents received the signal, the agents entered the apartment to prevent the destruction of evidence and a suspect's escape. The Eleventh Circuit rejected the argument that exigent circumstances were present because there was no evidence that the occupants of the apartment had any knowledge they were under police surveillance. Because "[c]ircumstances are not normally considered exigent where the suspects are unaware of police surveillance," the Eleventh Circuit affirmed the district court's conclusion that there was no exigency excusing the search warrant requirement. Id. at 670–71. The court also emphasized that any "urgency arising after the CI emerged from the apartment was entirely foreseeable—the agents themselves had concocted the ruse." Id. at 676.

The Court finds that the facts surrounding the entry into Anderson's home are more similar to those in McGregor than those in Santa. Thus, McGregor controls and mandates the conclusion that exigent circumstances were present, justifying the warrantless entry into the residence. Here, as in McGregor, agents placed an electronic

device into a package containing narcotics before completing a controlled delivery. When agents received the alert that the package had been opened, they reasonably believed that the defendant would discover the device, realize he was being watched, and attempt to destroy the narcotics. The McGregor court emphasized that both the identity of the defendant and the location where the package would be opened were not known. Similarly, here, law enforcement did not know whether Anderson would open the package and they did not know the ultimate location where the package would be opened. Indeed, law enforcement first obtained an anticipatory search warrant for the Maragaret Ave. address where Parcel 2 was to be delivered, fully expecting it would be opened there. They did not know, and could not have anticipated, that the package would be removed by Anderson from the initial location and taken to the Summer Savory St. residence.

In Santa, on the other hand, the Court found that exigent circumstances were not present because there was no evidence to suggest that the individuals inside the apartment were aware they were being surveilled. The Santa Court similarly found that, to the extent any exigency existed, law enforcement was responsible for creating the exigency by conducting the controlled purchase of the narcotics.

This Court emphasizes that here, unlike in Santa, law enforcement did not arrange for the package to be brought inside the residence. While law enforcement certainly played a role in the controlled delivery, they did not cause Defendant to retrieve the package from the Margaret Ave. location, drive the package to his residence, and bring the package inside the Summer Savory St. residence. Similarly,

in McGregor, the Eleventh Circuit found that law enforcement did not create the exigency even though they arranged a controlled delivery and later entered the residence where the delivery was directed. Here, officers had an even more limited role in the exigency than the officers in McGregor as Defendant brought the package from Margaret Ave. to the Summer Savory St. residence. Thus, they did not create the exigent circumstances that justified law enforcement's entry into the Summer Savory St. residence.

**b. Protective Sweep**

Because the Court concludes that law enforcement was lawfully within the Summer Savory St. residence, it also finds that it was objectively reasonable for law enforcement to perform a limited protective sweep. There is no evidence to suggest the sweep was overly broad. The only items identified during the sweep were a money counter that was in plain view and the odor of marijuana. At the hearing, the Government represented that agents did not go into closets or drawers during the sweep. Indeed, law enforcement did not locate Parcel 2 and its contents until after the execution of the search warrant.

Because there were exigent circumstances, law enforcement's entry into the home and subsequent protective sweep were lawful. As a result, Defendant's request to suppress the evidence seized from his home is due to be denied.

**c. Good Faith**

Finally, the Court notes that the purpose of the exclusionary rule is to deter law enforcement misconduct. See, e.g., Nix v. Williams, 467 U.S. 431, 442–43 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections."). Suppressing evidence in this case would not serve that purpose, where, as here, it appears that law enforcement acted in good faith in the course of the entry into Defendant's home, the securing of the Defendant's arrest, and the subsequent full search of his residence pursuant to what was reasonably believed to be a valid warrant.

Importantly, Defendant does not argue that the search warrant was not supported by probable cause. And while the search warrant affidavit did include plain view observations from the protective sweep, the search warrant affidavit was supported by probable cause without these observations. Indeed, law enforcement was able to successfully obtain an anticipatory search warrant for the Margaret Ave. residence where it was believed the package would be received.

Furthermore, the search warrant was being actively pursued prior to law enforcement's entry into Defendant's home. As discussed, officers initially obtained a search warrant for the Margaret Ave. location. After it became apparent that Defendant would not enter the Margaret Ave. residence and was traveling to his residence on Summer Savory St., Inspector Parkerson began the process of applying

for search warrant. Because she was already in the process of pursuing the search warrant when law enforcement received the alert that Parcel 2 had been opened, the Court finds that lawful means were being actively pursued prior to entry into the residence. This too negates any suggestion of bad faith.

As such, the Court finds that suppression of the evidence is unwarranted on these facts.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion to Suppress, (Dkt. 51), is **DENIED**.

**DONE and ORDERED** in Tampa, Florida, this 3rd day of August 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record
U.S. Marshal Service
U.S. Probation Office
U.S. Pretrial